## NO. 14-30295

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

ON APPEAL
FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA, SECTION S

UNITED STATES V. STACEY JACKSON
CRIMINAL ACTION NO. 13-131 E.D. La

---

## APPELLANT THE TIMES-PICAYUNE, L.L.C.'S
## MOTION FOR EXPEDITED REVIEW

---

Loretta G. Mince, #25796
Rebecca Sha, #35317
FISHMAN HAYGOOD PHELPS
   WALMSLEY WILLIS & SWANSON, L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana  70170-4600
Telephone:  (504) 586-5252
Facsimile: (504) 586-5250
*Attorneys for The Times-Picayune, L.L.C.*

NOW INTO COURT, comes The Times-Picayune, L.L.C. ("The Times-Picayune"), through undersigned counsel, and respectfully moves this Court to expedite its review of The Times-Picayune's petition for writ of mandamus and/or expedite its appeal pursuant to Federal Rule of Appellate Procedure 27 and Fifth Circuit Rule 27.5.[1]   For the reasons set forth below, The Times-Picayune respectfully requests that the Court place this case on an expedited briefing schedule, with argument to follow as soon thereafter as practicable.

## INTRODUCTION

Simultaneously with this motion[2], The Times-Picayune has filed a petition for writ of mandamus in this Court, both of which ask this Court to reverse and vacate an order compelling The Times-Picayune, a news organization, to respond to a subpoena issued in a pending criminal proceeding.

The subpoena seeks private, identifying information relating to two anonymous posters who made comments on Nola.com, The Times-Picayune's online news forum, in response to an article published in 2008. The order, which requires The Times-Picayune to disclose the requested information, implicates the important First Amendment right to engage in anonymous speech and raises an issue of first impression for this Court: What showing is required to overcome the

---

1 Pursuant to 5th Cir. R. 27.4, counsel for the other parties were contacted by undersigned counsel regarding this motion.  Counsel for the Defendant does not object to this motion. Counsel for the United States has not responded.
2 The Times-Picayune filed a notice of appeal in the district court yesterday, March 31, 2014.

First Amendment right of anonymous speech and compel disclosure of identifying information regarding individuals who anonymously commented online in the "comments" section under a news story regarding alleged wrongdoing by a public official?

Given the important and potentially far-reaching implications of the issue presented, the district court's order is an appropriate one for this Court's immediate review. There also is good cause for this Court to review this matter on an expedited basis: The district court's order, while it stands, puts The Times-Picayune in the difficult position of either complying with the order, and abandoning the First Amendment rights at issue, or facing contempt charges for failing to comply.[3]

Below The Times-Picayune provides a summary of (1) the events giving rise to The Times-Picayune's appeal and petition; (2) the issues presented; and (3) why expedited review is warranted.

## SUMMARY OF THE EVENTS AND PROCEDURAL HISTORY

The Times-Picayune's notice of appeal and petition for writ of mandamus follows the district court's erroneous March 26, 2014 order, which confirmed an order by the magistrate judge,[4] compelling The Times-Picayune to disclose the

---

3 The Times-Picayune has sought a stay of the Order from the district court. Even in the event that stay request is granted, expedited review is still desirable to minimize the delay in the underlying criminal proceeding.
4 Exhibit "A" Rec. Doc. No. 47.

2

private, identifying information of two anonymous posters who commented on its online discussion forum, Nola.com, in response to a subpoena issued in the underlying criminal proceedings.5  The Order initially ordered production of the information by April 1, 2014.  The Times-Picayune immediately filed a motion to stay the Order pending appellate review, and the District Court on April 1, 2014, granted a temporary stay of the Order pending its ruling on The Times-Picayune's motion to stay.

The underlying criminal proceeding involves Defendant Stacey Jackson ("Defendant"), who has been charged with conspiracy, solicitation of bribes, theft of federal funds, and obstruction of justice in connection with her public employment as the executive director of the New Orleans Affordable Homeownership agency ("NOAH").  Defendant seeks to dismiss her indictment on the basis that, according to Defendant, prosecutorial misconduct might have violated her rights of due process.

To establish prosecutorial misconduct, Defendant seeks to discover the identities of "aircheck" and "jammer1954," two anonymous posters who engaged in political speech about the investigation of Defendant and other public matters in comments they left under an August 2008 Nola.com news article titled, "N.O. Council Members Get Subpoenas for NOAH records."  Defendant claims that the

---

5 Exhibit "B", Rec. Doc. No. 71.

anonymous posters may be federal officials and uncovering their identities "might lead to the conclusion that there was a pattern, policy or practice of pre-indictment prosecutorial misconduct."[6]

In her Ex Parte Motion for Issuance of Subpoena Duces Tecum, Defendant argued that **if** the two anonymous posters are revealed to be management-level DOJ prosecutors or law enforcement officers, their comments **could** demonstrate a pattern, policy or practice of pre-indictment prosecutorial misconduct and be material to her due process defense.[7]  Because of that **possibility**, Defendant argued that The Times-Picayune should provide her with private information about their identity.

On January 21, 2014, the magistrate judge signed an order granting Defendant's motion,[8] and on January 23, 2014, The Times-Picayune was served with a subpoena ordering production of the above referenced materials.[9]

The Times-Picayune moved to quash the subpoena, arguing both that the subpoena would violate First Amendment protections of anonymous speech and that Defendant has not made a sufficient showing to outweigh that right.[10]  On February 14, 2014, the magistrate judge granted in part and denied in part The

---

6 Rec. Doc. No. 39, p. 2.
7 Rec. Doc. 39-1, p. 2.
8 Rec. Doc. No. 40.
9 Rec. Doc. No. 41.
10 Rec. Doc. No. 42. Defendant filed her response on February 7, 2014, arguing that she had made a sufficient showing and that The Times-Picayune lacked standing. Rec. Doc. No. 45.

4

Times-Picayune's motion.[11]   Relevant here, the magistrate ordered The Times-Picayune to produce the requested information for *in camera* review.[12]

On February 28, 2014, The Times-Picayune moved the district court to review the magistrate judge's order.[13]   During oral argument on that motion, the district judge requested a list of other anonymous comments on Nola.com that specifically identified Defendant by name.[14]   The Times-Picayune complied with that request by submitting to the Court a listing of thirty-three comments referring specifically to Defendant.   After oral argument, the district court also requested that the United States file a memorandum stating the procedural history of the grand jury investigation into Defendant.   The memorandum filed by the United States revealed that the grand jury that indicted Defendant on June 6, 2013 was empaneled on December 19, 2012 – more than four years after the August 2008 comments in question.[15]

---

11 *Id.*, Pg. 3.
12 *Id.*, Pg. 12. Pursuant to the magistrate judge's order, the "Place for Production" and "Date for Production" was modified to require that The Times-Picayune produce all information responsive to the subpoena directly to the Magistrate judge in his chambers. *Id.* The magistrate judge stated in his ruling that he would review the materials and attempt to determine whether the anonymous posters are prosecutors. Importantly, because commenters on Nola.com are not required to provide their name, it is often not possible to identify a poster from the records maintained by Nola.com. In such cases, additional subpoenas must be issued to Internet Service Providers and others to obtain information regarding a particular user. And even those subpoenas sometimes prove fruitless if, for example, the post was made from a public wi-fi network.
13 Rec. Doc. No. 56. On March 12, 2014, Defendant filed a response (Rec. Doc. No. 57) and on March 18, 2014, The Times-Picayune filed a reply memorandum (Rec. Doc. No. 66).
14 Rec. Doc. No. 70.
15 Rec. Doc. No. 69.

Nonetheless, on March 26, 2014, the district court affirmed the magistrate judge's order, concluding that it "was not clearly erroneous or contrary to law."[16]

On this day, The Times-Picayune has filed both a notice of appeal in the district court and a petition for writ of mandamus in this Court, both of which ask this Court to reverse and vacate the district court's order. As noted above, The Times-Picayune has also moved the district court to stay its order pending the outcome of the proceedings in this Court, and that motion remains pending.

The district court's order is clearly erroneous: Placed in context, none of the comments made by "aircheck" or "jammer1954" suggests that those two posters are likely to be federal officials, and their comments are virtually indistinguishable in tone and content from scores of other comments posted on Nola.com. Without a threshold finding that the two posters are likely to be federal officials or, more importantly, that the comments, even if made by federal officials, could have prejudiced the proceedings of a grand jury impaneled **four years later,** Defendant's rights simply do not outweigh the First Amendment right of anonymous speech.

---

16 Exhibit "B", p. 8.

## ISSUES PRESENTED

The Times-Picayune seeks this Court's immediate review because the district court's order clearly infringes both the First Amendment rights of the two posters to speak anonymously about public matters and the First Amendment interests of The Times-Picayune to foster open and robust debate on its online discussion forums. The issues presented, as currently articulated by The Times-Picayune's petition for writ of mandamus, are as follows:

1. Should this Court grant a writ of mandamus, where: The Times-Picayune cannot otherwise obtain adequate relief; compliance with the district court's order will cause harm that cannot be corrected on appeal; the district court's order was clearly erroneous; and the issues are of first impression, may reoccur in the future, and have significant impact beyond the immediate case?

2. Was the district court's legal analysis flawed, given that it failed to make a threshold finding that the speech was unlawful, or that the information sought would support a motion to dismiss Defendant's indictment, before it balanced the interests in disclosure against the anonymous speakers' First Amendment rights?[17]

3. Is an *in camera* review, designed to reveal the identity of anonymous speakers to the court and perhaps to employees of their Internet Service Providers and others, sufficient to protect anonymous speakers' First

---

17 *See, e.g., Dendrite Int'l, Inc. v. Doe No. 3*, 342 N.J. Super. 134, 151, 775 A.2d 756, 767 (N.J. Super. Ct. App. Div. 2001); *Columbia Ins. Co. v. Seescandy.Com*, 185 F.R.D. 573, 579 (N.D. Cal. 1999); *Doe v. Cahill*, 884 A.2d 451, 456 (Del. 2005); *Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128, 131 (D.D.C. 2009); *Mortgage Specialists, Inc. v. Implode-Explode Heavy Indus., Inc.*, 160 N.H. 227, 239, 999 A.2d 184, 193 (2010); *Highfields Capital Management, L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005); *Indep. Newspapers, Inc. v. Brodie*, 966 A.2d 432, 438, 456 (Md. 2009); *In re Baxter*, 01-00026-M, 2001 WL 34806203, at *5 (W.D. La. Dec. 20, 2001) (all requiring a threshold showing).

Amendment rights where a threshold finding that their speech was unlawful was never made?[18]

## EXPEDITED REVIEW IS WARRANTED

There is good cause to expedite review of The Times-Picayune's petition for writ of mandamus and/or appeal. Case law supports the proposition that matters involving the loss of First Amendment freedoms should be resolved expeditiously. *Nat'l Socialist Party of Am. v. Vill. of Skokie*, 432 U.S. 43, 44, 97 S. Ct. 2205, 2206, 53 L. Ed. 2d 96 (1977) (granting expedited review where an outstanding injunction would have deprive appellants "of rights protected by the First Amendment during the period of appellate review which, in the normal course, may take a year or more to complete."); *Freedman v. State of Md.*, 380 U.S. 51, 60, 85 S. Ct. 734, 740, 13 L. Ed. 2d 649 (1965) (finding that "the chilling effect of a censorship order, even one which requires judicial action for its enforcement, suggests all the more reason for expeditious determination of the question whether a particular film is constitutionally protected."); *Nebraska Press Ass'n v. Stuart*, 423 U.S. 1319, 1325, 96 S. Ct. 237, 240, 46 L. Ed. 2d 199 (1975) (recognizing in a

---

18 *See New York Times Co. v. Jascalevich*, 439 U.S. 1331,1335 (1978) (Marshall, J., in chambers) (on reapplication for stay) ("Given the likelihood that forced disclosure even for in camera review will inhibit the reporter's and newspaper's exercise of First Amendment rights I believe that some threshold showing of materiality, relevance, and necessity should be required."); *United States v. Cuthbertson*, 630 F.2d 139, 148 (3d Cir. 1980) ("We agree with CBS that an order for production of privileged materials for in camera review may not be based solely on the defendants' request for the material."); *United States v. Gambino*, 741 F. Supp. 412, 415 (S.D.N.Y. 1990) ("It is certain that some threshold showing of materiality, relevance, and necessity should be required before conducting an in camera review.") (internal punctuation excluded).

First Amendment case that "the very day-by-day duration of that delay [of resolution] would constitute and aggravate a deprival of such constitutional rights"); D*eerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) ("It is well settled that the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury").

In addition, good cause for expedited review also exists because the district court's order will result in the immediate infringement of the First Amendment rights of the two posters to speak anonymously about public matters and The Times-Picayune's First Amendment interests in fostering open communication and robust debate on its online discussion forums.[19] Because loss of anonymity is the very right that The Times-Picayune seeks to protect, compliance with the district court's order will cause irreparable harm and may render moot any relief that the Court may grant.

Finally, expedited review is warranted because the district court's order raises an important and urgent issue of first impression for this Court: What showing is required to overcome the First Amendment right of anonymous speech and compel disclosure of identifying information regarding individuals who

---

19 *Enterline v. Pocono Medical Center*, 751 F. Supp. 2d 782, 786 (M.D. Pa. 2008) (observing that a newspaper has sufficient injury to "assert the First Amendment rights of the anonymous commentators"); *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S. Ct. 710, 721 (1964) (recognizing "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.").

anonymously commented online in the "comments" section under a news story regarding alleged wrongdoing by a public official?

A decision from this Court will substantially impact the way the federal district courts in this Circuit manage discovery related to the growing issue of anonymous online speakers and bloggers. The issue is timely because there is a high likelihood that the issue will arise repeatedly in the near future. In the Eastern District of Louisiana alone, the propriety of disclosing the identity of anonymous speakers is an issue that district courts will face so long as criminal defendants seek to rely upon the findings in *U.S. v. Bowen*[20] to support prosecutorial misconduct defenses in their own cases. Without guidance from this Court, the First Amendment rights of anonymous speakers will be continually challenged, but without standards to assess whether the party seeking the speakers' identities is really entitled to that protected information.

## <u>CONCLUSION</u>

For the foregoing reasons, The Times-Picayune submits that its motion for expedited review should be granted.

---

20 *U.S. v. Bowen, et al.*, No. 10-204 (E.D. La. 2013) (Rec. Doc. No. 1137). In *Bowen*, the district judge granted the Defendants a new trial based, *inter alia*, on revelations that senior prosecutors had regularly posted negative comments about the *Bowen* Defendants during and right before the Defendants' trial.

Respectfully submitted,

_s/ Loretta G. Mince_
Loretta G. Mince, #25796
Rebecca Sha, #35317
FISHMAN HAYGOOD PHELPS
   WALMSLEY WILLIS & SWANSON, L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana  70170-4600
Telephone:  (504) 586-5252
Facsimile: (504) 586-5250
*Attorneys for The Times-Picayune, L.L.C.*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel certifies that the following listed persons and entities as described in Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

Plaintiff-Appellee:
     The United States

Counsel for United States-Appellees:
     Fred Patrick Harper, Jr.
          U.S. Department of Justice

Defendant-Appellees:
     Stacey Jackson

Counsel for Defendant-Appellees:
     Edward Joseph Castaing, Jr.
          Crull, Castaing & Lilly, L.L.P.

Intervenor-Appellants:
     The Times-Picayune, L.L.C.

Counsel for Intervenor-Appellees:
     Loretta G. Mince
          Fishman Haygood Phelps Walmsley Willis & Swanson,  L.L.P
     Rebecca Sha
          Fishman Haygood Phelps Walmsley Willis & Swanson,  L.L.P

                              s/ Loretta G. Mince
                              Loretta G. Mince
                              Date: April 1, 2014

## Fifth Circuit Rule 27.4 Certificate and Certificate of Service

On March 31, 2014, The Times-Picayune, L.L.C., through undersigned counsel, notified all counsel of record in this matter via email of its intention to file this motion.  Counsel for Defendant has no opposition.  Counsel for the United States did not respond prior to filing.

Undersigned counsel certifies that a copy of this motion has been served on all counsel of record via United States Mail.  Counsel has also been served via e-mail.

> Edward Joseph Castaing, Jr.
> Crull, Castaing & Lilly
> Pan American Life Center
> 601 Poydras Street, Suite 2323
> New Orleans, LA 70130
>
> Fred Patrick Harper, Jr.
> United States Attorney's Office
> 650 Poydras Street, Suite 1600
> New Orleans, LA 70130
>
> Honorable Mary Ann Vial Lemmon
> United States District Court
> Eastern District of Louisiana
> 500 Poydras Street, Room C406
> New Orleans, LA  70130

> *s/ Loretta G. Mince*
> Loretta G. Mince
> Date: April 1, 2014

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

STACEY JACKSON

CRIMINAL ACTION

NO. 13-131

SECTION "S" (2)

## ORDER AND REASONS ON MOTION

After a lengthy pre-indictment investigation and grand jury proceedings with accompanying publicity, defendant Stacey Jackson was charged with conspiracy, solicitation of bribes, theft of federal funds and obstruction of justice arising from her former employment as executive director of NOAH, the New Orleans Affordable Homeownership agency. Upon this court's authorization, Record Doc. No. 40, Jackson issued a subpoena to The Times Picayune, L.L.C. d/b/a NOLA Media Group ("The Times-Picayune"). The designated place and date for production was the office of defense counsel on February 3, 2014. Record Doc. No. 41.

The subpoena seeks information in support of a prosecutorial misconduct defense. It requires production of certain specifically identified data that would provide the actual identities of user names "aircheck" and "jammer1954," two aliases of persons using The Times-Picayune's Nola.com news reporting site to make anonymous disparaging comments about Jackson, including proclamations of her presumed guilt, alleged criminality and predicted conviction. Defendant suspects that the anonymous commenters



EXHIBIT

A

are in fact federal prosecutors and/or law enforcement agents or other officials who participated in or had supervisory authority over her investigation and resulting criminal case. She has previously submitted some evidence in support of her prosecutorial misconduct defense. Record Doc. No. 17-2. Her suspicions are buttressed by the recent experience in this court of at least seven defendants and two investigation targets in three different proceedings whose convictions were overturned, whose indictment was dismissed or whose investigation was dropped after misconduct similar – although certainly more extensive – than what Jackson alleges in her case was shown to have occurred.[1]

In response to the subpoena, The Times-Picayune filed a motion to quash, Record Doc. No. 42, that is pending before me. Defendant filed a timely opposition memorandum. Record Doc. No. 45. The government has neither supported nor opposed the motion. Trial is set to commence on May 12, 2014, and the deadline by which defendant must file any substantive motions, including any motion to dismiss the indictment on prosecutorial misconduct grounds, is March 17, 2014. Record Doc. No. 31.

---

[1]See United States v. Bowen et al., Crim. No. 10-204"N"(1), Record Doc. No. 1137; United States v. Fazzio, Crim. No. 11-157"C"(5), Record Doc. Nos. 293-94; Manuel Torres, Charges Against River Birch Targets Dominick Fazzio and Mark Titus Dismissed, Judge Orders, The Times-Picayune, http://www.nola.com/crime/index.ssf/2013/03/charges_against_river_birch_pr.html (Mar. 12, 2013, 12:20 PM, updated Mar. 12, 2013, 12:24 PM); Heebe et al. v. United States, Civil Action No. 10-3452"C"(5).

Having considered the written submissions of the parties, the record as a whole and the applicable law, the motion is GRANTED IN PART AND DENIED IN PART, subject to the specific order contained herein, as follows.

As an initial matter, I agree with The Times-Picayune, and the opposition does not strenuously contest, that it has standing to assert the First Amendment claim upon which parts of its motion are based.  Drasin v. John Does 1 - 10, No. ELH-13-1140, 2013 WL 3866777, at *2 n.3 (D. Md. July 24, 2013) (citing Schaumberg v. Citizens for a Better Env't, 444 U.S. 620, 634 (1980); Enterline v. Pocono Med. Ctr., 751 F. Supp. 2d 782, 786 (M.D. Pa. 2008)).

The real thrust of The Times-Picayune's motion is to present the delicate and often-addressed questions of (1) the appropriate pretrial use of the subpoena power in criminal cases, and (2) the balance that must be maintained when the fundamental constitutional rights of opposing interests conflict.  In this instance, the conflicting rights are Jackson's Fifth Amendment Due Process rights to appropriate procedures and fundamental fairness in the criminal accusatory process and the First Amendment rights of citizens to comment anonymously in a press-hosted forum on matters of public interest.

The threshold inquiry is the propriety of defendant's subpoena.  In United States v. Nixon, 418 U.S. 683 (1974), the United States Supreme Court authoritatively adopted the approach previously taken by lower federal courts in establishing "certain fundamental characteristics of the subpoena duces tecum in criminal cases" and a "required showing"

and "test" by which its proper use must be evaluated. Id. at 698-99. The Supreme Court stated that the subpoena Rule applicable in criminal cases, Fed. R. Crim. P. 17, "was not intended to provide a means of discovery . . . . [I]n order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevent [sic]; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" Id. at 699. Thus, "to carry his burden, [the party issuing the subpoena] must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." Id. at 700.

Concerning the First Amendment interest asserted by The Times-Picayune on behalf of the commenters who use its Nola.com site, "[a]s a general proposition, anonymous speech is protected by the First Amendment." Justice for All v. Faulkner, 410 F.3d 760, 764 (5th Cir. 2005) (citing McIntyre v. Oh. Elections Comm'n, 514 U.S. 334, 342 (1992)) (additional citations omitted). The constitutional protection extends beyond "the field of literary endeavor," to include a wide range of speech and publication. McIntyre, 514 U.S. at 342-43. However, it is clear, as succinctly concluded by Magistrate Judge Kirk of the Western District of Louisiana at the end of his exhaustive analysis of McIntyre and other

decisions, that only "a limited right of anonymity exists." In re Baxter, No. 01-00026-M, 2001 WL 34806203, at *10 (W.D. La. Dec. 20, 2001) (emphasis added).

Limitations on the right to anonymous speech apply even more stringently to federal prosecutors and other government agents and officials engaged in criminal investigation and prosecution. As Judge Engelhardt of this court has noted, citizens who become lawyers, prosecutors or other federal agents knowingly subject themselves to further restrictions on their already limited right to speak anonymously, especially as to ongoing investigations and cases pending within the scope of their official responsibilities. A plethora of court decisions, professional conduct rules, federal regulations, Local Rules of court and provisions in the Department of Justice's own United States Attorneys Manual place restrictions on their speech. United States v. Bowen, No. 10-204, 2013 WL 5233325, at *17-22 (E.D. La. Sept. 17, 2013) (citing La. Rules of Prof. Conduct 3.8; United States v. Lopez-Avila, 678 F.3d 955, 964-65 (9th Cir. 2012); 28 C.F.R. § 50.2; United States Attorneys Manual, Ch. 1-7.000; U.S.D.C., E.D., La. Local Crim. Rules 53.1 - 53.6).

Thus, courts have emphasized, primarily in the context of civil litigation, that "'[t]he right to anonymous speech . . . is not unlimited,' and the identity of an anonymous speaker may be disclosed . . . to protect a litigant's legitimate interest in vindicating his or her legal rights in court." Drasin, 2013 WL 3866777, at *2 (quoting Lefkoe v. Jos. A. Bank Clothiers, Inc., 577 F. 3d 240, 249 (4th Cir. 2009)) (emphasis added); accord In re Anonymous Online Speakers, 661 F.3d 1168, 1173 (9th Cir. 2011). In civil cases, where

the stake is usually the recovery of money damages to vindicate tort or contract law interests, courts frequently order disclosure of the identity of anonymous speakers. See id. at 1177-78 (refusing to grant writ of mandamus to overturn district court's order that defendant must reveal identities of anonymous online speakers on its website); Drasin, 2013 WL 3866777, at *5 (blog administrator's motion to quash subpoena seeking identity of anonymous online commenters denied and order requiring production); Doe I v. Individuals, 561 F. Supp. 2d 249, 257 (D. Conn. 2008) (denying anonymous online poster's motion to quash subpoena seeking his identity). The courts do so by weighing and balancing the limited First Amendment right of the anonymous speaker against the opposing litigant's interest and ruling in favor of the party whose interest outweighs the other. See In re Anonymous Online Speakers, 661 F.3d at 1177 ("The district court here appropriately considered the important value of anonymous speech balanced against a party's need for relevant discovery in a civil action. It also recognized the 'great potential for irresponsible, malicious, and harmful communication' and that particularly in the age of the Internet, the 'speed and power of internet technology makes it difficult for the truth to "catch up" to the lie.'"); Drasin, 2013 WL 3866777, at *3 (Where request "impinges on First Amendment rights, courts will 'balance the burdens imposed . . . against the significance of the . . . interest in disclosure' to determine whether the 'interest in disclosure . . . outweighs the harm.'") (quoting Perry v. Schwarzenegger, 591 F.3d 1141, 1161 (9th Cir. 2010)); Doe I, 561 F. Supp. 2d at 254 (quotation omitted) ("Doe 21 has a

-6-

First Amendment right to anonymous Internet speech, but . . . the right is not absolute and must be weighed against Doe II's need for discovery to redress alleged wrongs. . . . . This balancing analysis ensures that the First Amendment rights of anonymous Internet speakers are not lost unnecessarily, and that plaintiffs do not use discovery to harass, intimidate or silence critics in the public forum opportunities presented by the Internet."); cf. Sinclair v. Tubesocktedd, 596 F. Supp. 2d 128, 131-32 (D.D.C. 2009) ("balancing of interests" approach employed when First Amendment anonymous speech right was asserted in response to subpoena, and subpoena quashed because underlying action which subpoena sought to advance was found to be "fundamentally flawed").

The interest that Stacey Jackson seeks to vindicate, her Due Process rights in the accusatory process of this serious criminal case, where her liberty interest in freedom itself is ultimately at stake, is a particularly more compelling interest than those asserted by the civil litigants in the cases cited above.

Applying the foregoing standards, I find that defendant's subpoena was properly issued because she has made the required threshold showing in this particular instance.

Because I have the advantage over counsel for The Times-Picayune of having read the record of the Justice Department's preliminary investigation ("the Horn Reports") of the misconduct of the former First Assistant and the former Senior Litigation Counsel in the local United States Attorney's Office, I cannot accept The Times-Picayune's argument that the subpoena is based on mere "speculation." Record Doc. No. 42-1 at p. 14. Of

course, neither I nor the defendant can be <u>certain</u> that the subpoena will yield information material to her prosecutorial misconduct defense. However, certainty is <u>not</u> the standard. The <u>Nixon</u> Court framed the standard in terms of only "a sufficient likelihood" that the subpoenaed materials are relevant. <u>Nixon</u>, 418 U.S. at 700. The evidence previously submitted by Jackson – though certainly not alone sufficient to support dismissal of the indictment – when coupled with the evidence, tone and tenor of the Horn Reports, is sufficient in my view to establish that Jackson has at least a colorable claim of prosecutorial misconduct, that the identity of these two commenters is relevant to it, and that she cannot adequately prepare that defense without access to those identities.

The Horn Reports contain significant indications, principally from the statements and testimony of the former First Assistant and the former Senior Litigation Counsel in the local United States Attorney's Office, establishing a sufficient likelihood that others in the United States Attorney's Office and in federal law enforcement agencies responsible for conducting criminal investigations engaged in similar conduct in other cases that led to the overturning of convictions, dismissal of an indictment and dropping of a longstanding criminal investigation noted above. The Horn Reports establish that Justice Department investigators had sufficient factual basis to send a subpoena to The Times-Picayune seeking the identities of 11 other Nola.com commenters, whom they suspected to be federal prosecutors and/or investigating agents; yet, the investigators simply "deferred" their request for this information in response to The Times-Picayune's resistance and made no

subsequent attempt to enforce the subpoenas, despite the fact that one of the suspected commenters, an FBI agent calling himself "thewizard," later admitted his actual identity to investigators. Despite all the technical expertise that the Justice Department brings to bear against the targets of its investigations, the Horn Reports concluded that its investigators could not forensically recover computer data evidence from the local United States Attorney's Office internet portals for the relevant years 2010-11, because the local office did not retain data for that period. Thus, the <u>Nixon</u> Court's requirement that the subpoenaed materials cannot otherwise be reasonably procured in time to prepare defendant's prosecutorial misconduct defense in this case appears satisfied.

The content of the Horn Reports indicates to me that the inquiries its investigators made of Justice Department personnel other than the former First Assistant and former Senior Litigation Counsel in the local United States Attorney's Office were less than searching and exhaustive. As Judge Engelhardt has previously found, "[I]nformation obtained during the course of Mr. Horn's investigation . . . substantially increases the Court's concerns that Nola.com posting activity about [the Bowen] case, <u>and others</u>, by government attorneys and personnel, was far more extensive than previously suggested, and even presently known." <u>Bowen</u>, 2013 WL 5233325, at *45 (emphasis added).

The Horn Reports reflect that both the former First Assistant and the former Senior Litigation Counsel in the local United States Attorney's Office admitted that they commented online under other aliases, which they could not recall. The evidence indicates

that they sometimes commented in close proximity to each other, as if in chat mode. The former Senior Litigation Counsel occasionally used different aliases for himself to comment on the same topics, as if in chat mode with himself. Some of the Nola.com comments made by aircheck and jammer1954 were made in close proximity to those made by an alias of the former Senior Litigation Counsel. Their comments were made in the same kind of cop jargon lingo sometimes employed by the fake names of the former Senior Litigation Counsel. Aircheck in particular showed the kind of persistent commenting, totaling about 500 comments, including at least 11 specifically targeting Stacey Jackson and NOAH, that was the trait of other commenting that has conclusively been attributed to the former First Assistant and the former Senior Litigation Counsel in the local United States Attorney's Office.

Some courts have identified the characteristics of subpoenas that constitute impermissible "fishing expedition" discovery devices in criminal cases to include absence of information as to the contents or nature of the materials sought, failure to show a likelihood of the existence of the materials, overly broad-ranging requests and lack of specificity, particularity and detailed description of the materials sought. E.g., United States v. Carriles, 263 F.R.D. 400, 404-05 (W.D. Tex. 2009) (citing Nixon, 418 U.S. at 700-02; Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951); United States v. Arditti, 955 F.2d 331, 346 (5th Cir. 1992); Black v. Sheraton Corp., 564 F.2d 531, 545 (D.C. Cir. 1977); United States v. Skilling, Crim. No. H-04-025, 2006 WL 1006622, at *2

(S.D. Tex. Apr. 13, 2006); United States v. Ruedlinger, 172 F.R.D. 453, 456 (D. Kan. 1997)). The subpoena issued by Jackson suffers from no such shortcomings. It did not request – nor would I permit – a request for the identity of every person who ever commented about Stacey Jackson and/or NOAH on Nola.com. Instead, it is restricted to a relevant time period and particularized kinds of information and materials concerning only two anonymous commenters, whose identities are demonstrably relevant for the reasons discussed above.

For all of the foregoing reasons, I find that defendant's subpoena was properly issued under the Nixon standards. Thus, the court must proceed to the question of how best to balance the competing interests of the commenters' limited First Amendment rights against the defendant's Due Process rights. I conclude that the optimum procedures to insure that the appropriate balance is achieved in this instance are the tools provided in Rule 17 itself and approved by the Supreme Court in Nixon.

Fed. R. Crim P. 17(c)(2) provides that, upon motion of the sort made by defendant in this case, "the court may quash or modify the subpoena if compliance would be unreasonable." (Emphasis added). Fed. R. Crim. P. 17(c)(1) provides that "t]he court may direct the [subpoena recipient] to produce the designated items in court before trial. . . . [and] may permit the parties and their attorneys to inspect all or part of them." (Emphasis added). In addition, the Supreme Court in Nixon and other courts applying the Nixon standards have found that, while not required or generally used, in camera inspection of

-11-

subpoenaed materials may properly be employed to aid the court in assuring that Rule 17 subpoenas are restricted to their appropriate use and that the proper balance between potentially conflicting constitutional interests may be reached. Nixon, 418 U.S. at 714-16; United States v. Libby, 432 F. Supp. 2d 26, 32 (D.D.C. 2006). Accordingly,

IT IS ORDERED that the motion is DENIED IN PART insofar as it requests that the subpoena be quashed in its entirety such that no production of any kind might be required.

IT IS FURTHER ORDERED, however, that the motion is GRANTED IN PART, but only in that the subpoena is modified as follows: As issued, the subpoena required production of the requested information by The Times-Picayune directly to defense counsel at his office on February 3, 2014. Record Doc. No. 41. The "Place for Production" and "Date for Production" provisions of the subpoena are hereby modified to require instead that The Times-Picayune must produce, no later than February 19, 2014 at 5:00 p.m., all information responsive to the subpoena directly to me in my chambers, 500 Poydras Street, Room B-409, New Orleans, Louisiana, for my in camera review.

If I determine based upon my in camera review that aircheck and jammer1954 are citizens without connection to the prosecution, their First Amendment right to anonymous speech will outweigh the Due Process rights of the defendant and no further disclosure, production or inspection of the information will be permitted. Otherwise, whether and, if

so, how and when the responsive information may be made available to the parties for inspection will be established by further order of the court.

New Orleans, Louisiana, this ____14th____ day of February, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                          CRIMINAL ACTION

VERSUS                                            NO:  13-131

STACEY JACKSON                                    SECTION: "S" (2)

### OPINION

The Times-Picayune, L.L.C. has filed an appeal of the United States Magistrate Judge's Order and Reasons denying its motion to quash a subpoena served on it by defendant, Stacey Jackson, and requiring production of the requested material to the magistrate judge for an *in camera* inspection (Doc. #56). For the reasons that follow, the ruling of the magistrate judge (Doc. #47) is **AFFIRMED**.

**IT IS HEREBY ORDERED** that the Times-Picayune, L.L.C. produce all information responsive to the subpoena (Doc. #41) to United States Magistrate Judge Joseph C. Wilkinson, Jr. in his chambers, 500 Poydras Street, Room B-409, New Orleans Louisiana, for his *in camera* review no later than noon on April 1, 2014.

### BACKGROUND

On June 6, 2013, the Grand Jury in the United States District Court for the Eastern District of Louisiana filed a four-count Indictment against defendant, Stacey Jackson, charging her with conspiracy, solicitation of bribes, theft of federal funds and obstruction of justice in connection with her former employment as the executive director of the New Orleans Affordable Homeownership agency ("NOAH"). Approximately five years prior, the Times-Picayune posted articles on Nola.com regarding potential corruption within NOAH. Many bloggers commented on these articles. Doc. #56-1.



EXHIBIT

*B*

Jackson filed an *ex parte* motion for issuance of a subpoena *duces tecum* to the Times-Picayune and production prior to trial pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure seeking information that would identify two of the bloggers, "aircheck" and "jammer1954." Doc. #39. Jackson argued that posts authored by "aircheck" and "jammer1954" in response to articles about her or NOAH "obviously indicate government inside action," contain "verbiage akin to prosecutorial information and efforts; and obvious efforts to pressure suspects and targets of the investigation to cooperate with the government." Id. She contended that if these bloggers are government officials, such information would support a motion to dismiss the Indictment against her on prosecutorial misconduct grounds. The magistrate judge granted Jackson's motion (Doc. #40), and a subpoena was issued to the Times-Picayune ordering it to produce to Jackson's counsel by February 3, 2014:

> All documents related to the identity of the user names, "aircheck," and "jammer1954," including but not limited to (1) registration information, documents that provide all names, mailing addresses, email addresses, downstream and upstream email chains, phone numbers, billing information, date of account creation, account information, passwords, and all other identifying information associated with "aircheck," and "jammer1954," and (2) the usage/login information related to "aircheck," and "jammer1954," including but not limited to documents that provide IP [Internet Protocol] logs, IP address information at time of registration and subsequent usage, computer usage logs, or other means of recording information concerning the usage of "aircheck," and "jammer1954," from January 1, 2008, to the present.

Doc. #41.

The Times-Picayune filed a motion to quash the subpoena, arguing that the production was an unreasonable infringement on the bloggers' First Amendment right to anonymous free speech.

2

Doc. #42. In ruling on that motion, the magistrate judge examined the factors established by the Supreme Court of the United States in United States v. Nixon, 94 S.Ct. 3090, 3103 (1974), for the issuance of a subpoena under Rule 17(c) of the Federal Rules of Criminal Procedure, and weighed Jackson's Fifth Amendment due process right against the bloggers' First Amendment right to anonymous free speech. Doc. #47.   He noted that the right to anonymous free speech is not unlimited, especially if the speaker is a prosecutor or other federal agent, who is subject to rules and regulations that restricts his or her ability to comment on ongoing investigations or cases pending within the scope of his or her official responsibilities. Id.   The magistrate judge discussed the recent experience in this jurisdiction were the former First Assistant and former Senior Litigation Counsel in the local United States Attorneys Office admitted to blogging about ongoing investigations and cases on Nola.com, under certain aliases and others that they could not recall. Id. He noted that after this conduct was revealed, "at least seven defendants and two investigation targets in three different proceedings [had] convictions [] overturned, [an] indictment [] dismissed or [] investigation [] dropped." Id.   The magistrate judge ruled that, in light of such conduct, there was a "sufficient likelihood" that the subpoena at issue could lead to information relevant to Jackson's prosecutorial misconduct claim. Id. Thus, being mindful of the bloggers' First Amendment right to anonymous free speech, the magistrate judge ordered the Times-Picayune to submit the responsive documents to him for an *in camera* inspection, and stated that:

> If [he] determine[s] based upon [his] *in camera* review that aircheck and jammer1954 are citizens without connection to the prosecution, their First Amendment right to anonymous speech will outweigh the Due Process rights of the defendant and no further disclosure, production or inspection of the information will be permitted. Otherwise, whether and, if so, how and when the responsive information may be made available to the parties for inspection will be established by further order of the court.

Id.

This matter is before the court on an appeal of that order. The Times-Picayune argues that any production of the information that may identify the anonymous bloggers, even for an *in camera* inspection by the magistrate judge, is an unreasonable infringement on the bloggers' First Amendment right to anonymous free speech. It argues that to obtain information regarding the bloggers' identities, Jackson must present "evidence that the specific posters here are in fact federal officials and that the speech on its face is unlawful, in violation of her due process rights." Id. Jackson contends that she cannot prove that the bloggers are federal officials or that the speech is unlawful until she has the identifying information, and that the magistrate judge's modification of the subpoena to order an *in camera* inspection is "a great and fair compromise" that protects "the anonymity of any blogger that [is] not shown to be a government person." Doc. #57.

## ANALYSIS

### A.    Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(A), a district judge may reconsider a pretrial matter determined by a magistrate judge "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." See also Merritt v. Int'l Bhd. of Boilmakers, 649 F.2d 1013, 1016 (5th Cir. 1981) ("[T]he magistrate possessed the authority under 28 U.S.C. § 636(b)(1)(A) to enter non-dispositive discovery orders[,]" which "are reviewable under the 'clearly erroneous and contrary to law' standard").

### B.    Rule 17(c) of the Federal Rules of Criminal Procedure

Rule 17(c)(1) of the Federal Rules of Criminal Procedure permits the subpoena of "books, papers, documents, data, or other objects." The court may direct that the items be produced before

trial, and permit the parties and their attorneys to inspect all or part of them. Id. "A subpoena for documents may be quashed if their production would be 'unreasonable or oppressive,' but not otherwise." United States v. Nixon, 94 S.Ct. 3090, 3103 (1974); FED. R. CRIM. P. 17(c)(2).

In Nixon, White House staff members and political supporters of President Nixon were indicted, and the Special Prosecutor filed a motion under Rule 17(c) for a subpoena *duces tecum* seeking the pre-trial production of certain tapes and documents relating to specifically identified conversations between the President and others. Id. at 3095. The President, citing executive privilege, moved to quash the subpoena. Id.

The Nixon Court stated that, to require pre-trial production under Rule 17,

the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and not intended as a general "fishing expedition."

Id. at 3103. Stated differently, the party seeking the production "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." Id. As to relevancy, the Court stated that there must be a "sufficient likelihood" that the subpoenaed materials are relevant. Id.

In this case, the magistrate judge's application of Nixon to the subpoena in question is not clearly erroneous or contrary to law. Considering all of the available information regarding the blogging incident in the local United States Attorneys Office, its impact on cases in this district, and the blogs regarding Jackson and/or NOAH authored by "aircheck" and "jammer1954," there is a "sufficient likelihood" that the information Jackson requested will lead to information relevant to her prosecutorial misconduct claim. Further, she cannot obtain this information from another source, and it is necessary for her to prepare pretrial motions. Finally, the subpoena is not a "fishing expedition,"

but is narrowly tailored to seek information regarding two specific bloggers whose posts have

substantial similarities to ones known to have been posted by former prosecutors.[1]  Therefore, the

magistrate judge correctly determined that the subpoena complies with Rule 17(c).

---

[1] On August 12, 2008 "aircheck" posted the following comment praising law enforcement in response to an article about NOAH on Nola.com:

> . . . Feds can probably only fry one fish at a time from a manpower standpoint.
>
> Face it, these scums and BS thugster non-profits ARE STARTING TO FALL LIKE DOMINOES !!!!
>
> Federal law enforcement is starting to gain real momentum on this godforsaken group of criminal thugster-scums !!!!!
>
> I'm thankful the tide is finally starting to turn on this scum...
>
> Thank you to all Federal Law Enforcement, I appreciate your ongoing efforts !!!!! I would assume it is a painstaking process to investigate, interrogate, prosecute and incarcerate all of this SCUM.

On August 9, 2008, "campstblue," a known moniker of former Assistant United States Attorney Salvadore Perricone, similarly praised law enforcement in responding to an article about NOAH on Nola.com:

> well, man - you know, man. I didn't know anything about dis stuff, man, you hear what I'm saying, man. You know, man, like you always looking for something negative to write about, man. How's dis going to help the racovery, man, you hear what I'm saying, man. We just trying to make it back, man. Didn't you hear what I said man, dis is a choclate city, man and we do things the choclate way, man − you hear what I'm saying, man?
>
> TRANSLATION: It's our turn to steal.  We got the power.  You can't do anything to us.
>
> God Bless the US Attorneys office!!!!!!!!!

### C.    First Amendment Interests

In Nixon, where after holding that the subpoena *duces tecum* complied with Rule 17(c), the Supreme Court of the United States, discussed the President's claim of executive privilege regarding the execution of the subpoena and the *in camera* review at issue. Id. at 3102-05. The Court recognized a "presumptive privilege" regarding Presidential communications, an interest that "is weighty indeed and entitled to great respect." Id. at 3109. However, the Court found that the district court did not err in ordering an *in camera* inspection of the material because the "presumptive privilege" is "based only on the generalized interest in confidentiality" and "must yield to the demonstrated, specific need for evidence in a pending criminal trial." Id. at 3110.

In this case, the magistrate judge properly found that the bloggers have a First Amendment right to anonymous speech. Justice for All v. Faulkner, 410 F.3d 760, 764 (5th Cir. 2005) (citing McIntyre v. Ohio Elections Comm'n, 115 S.Ct. 1511, 1516-17 (1995)). He also properly recognized that the right to anonymous speech is not unlimited, and that such limitation applies "even more stringently to federal prosecutors and other government agents and official engaged in criminal investigation and prosecution," who are subject to "[a] plethora of court decisions, professional conduct rules, federal regulations, Local Rules of court and provisions in the Department of Justice's own United States Attorneys Manual plac[ing] restrictions on their speech." Doc. #47 (citing United States v. Bowen, No. 10-204, 2013 WL 5233325, at *17-22 (E.D. La. Sept. 17, 2013)).

In balancing Jackson's need for the subpoenaed information against the bloggers' limited right to anonymous free speech, the magistrate judge determined that an *in camera* inspection would be the best vehicle to protect both interests. Indeed, the Nixon Court found that an *in camera* inspection of the requested material was warranted when the President claimed an executive privilege in an

7

attempt to defeat a Rule 17 subpoena. Further, in United States v. LaRouche Campaign, 841 F.2d 1176, 1182 (1st Cir. 1988), the court, in weighing a defendants' need for information sought under a Rule 17 subpoena against the National Broadcasting Company, Inc.'s ("NBC") claim of journalistic privilege under the First Amendment, held that NBC's First Amendment interests did not outweigh the defendants' interest in the production of the subpoenaed material that was relevant to ensuring that the defendants had a fair trial under the Fifth and Sixth Amendments. In that case, the court concluded that *in camera* production was appropriate because the district court would "balance the competing constitutional interests, limiting disclosure of [materials protected by the First Amendment] to those cases where their use would, in fact, be of significant utility to a criminal defendant." Id. at 1183. The court further observed that:

> An *in camera* proceeding seems especially suited to the needs of all parties in cases like this – where there is a very likely need for materials by the defense, a very real if generalized concern about excessive disclosure on the party of the media, a judicial economy interest in avoiding delay during trial, and the possibility that by the time a decision must be made on disclosure to a party the need for disclosure will have disappeared or diminished.

Id.

In light of these authorities, the magistrate judge's order in this case requiring an *in camera* inspection of the materials sought by Jackson from the Times-Picayune was not clearly erroneous or contrary to law. In his order, the magistrate judge specified that he would safeguard the identifying information of the bloggers if they are private citizens, but would determine what further actions are necessary if they are indeed government attorneys or agents. Therefore, the magistrate judge's ruling is AFFIRMED.

## CONCLUSION

**IT IS HEREBY ORDERED** that the ruling of the magistrate judge denying the Times-Picayune's motion to quash and requiring the production of the requested material to the magistrate judge for an *in camera* inspection (Doc. #47) is **AFFIRMED.**

**IT IS HEREBY ORDERED** that the Times-Picayune, L.L.C. produce all information responsive to the subpoena (Doc. #41) to United States Magistrate Judge Joseph C. Wilkinson, Jr. in his chambers, 500 Poydras Street, Room B-409, New Orleans Louisiana, for his *in camera* review no later than noon on April 1, 2014.

New Orleans, Louisiana, this   26th   day of March, 2014.

MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE